**UNITED STATES COURT OF APPEALS**
**SECOND CIRCUIT**
**------------------------------------------------------------x**

**ROADZEN, INC.** | **Dist. Ct No. 25-cv-07867 (JPO)**
**Ct of Appeals Dkt # 26-2126**

**Plaintiff/Appellant,**

**METEORA CAPITAL PARTNERS, L.P., METEORA SELECT TRADING OPPORTUNITIES MASTER, L.P., METEORA STRATEGIC CAPITAL, LLC, METEORA CAPITAL, LLC, VIKAS MITTAL, JOSEPH LEVY, KEVIN S. GAHWYLER, And HENRY ROGANO.**

**Defendants/Appellees.**
**-----------------------------------------------------------------x**

**Motion Pursuant to FRAP 30 and Local Rule 30.1 to Supplement the Appendix with the August 27, 2026 Order of the Delaware Chancery Court in the Case of: Meteora Capital Partners, L.P -v- Roadzen, Inc. [C.A. No. 2025-0421-JTL]**

**Respectfully submitted by:** **The Shayne Law Group, P.C.**
**Richard E. Schrier, Esq.**
**Attorneys for Plaintiff-Appellant, Roadzen, Inc.**
**262 W. 38th Street, Ste 1705**
**New York, New York 10018**
**212-566-4949/516-739-8000**
**resincourt@aol.com**

**Description of dispute:**

This action arises from an OTC Equity Prepaid Forward Transaction (the "Forward Purchase Transaction") entered into on August 25, 2023, in connection with the de-SPAC merger between Vahanna Tech Edge Acquisition I Corp. ("Vahanna"), a publicly traded special purpose acquisition company, and Roadzen, Inc. ("Old Roadzen"), a privately held technology company founded in 2015. The de-SPAC merger closed on September 20, 2023, resulting in the surviving public company, Plaintiff-Appellant Roadzen, Inc. ("Roadzen").

The Forward Purchase Transaction was documented through four related agreements:

(i) a Confirmation Agreement, referred to as the Forward Purchase Agreement (the "FPA");

(ii) an ISDA 2002 Master Agreement, incorporated into the FPA;

(iii) a Subscription Agreement; and

(iv) an Amendment to the FPA executed on January 30, 2024 (the "Amendment"). [The counterparties to the Forward Purchase Transaction were Defendants-Appellees Meteora Capital Partners, LP, Meteora Select Trading Opportunities Master, LP, and Meteora Strategic Capital, LLC (collectively, "Meteora"). Meteora Capital, LLC is the parent and controlling affiliate of the Meteora entities.]

Meteora is an investment firm founded in 2021 by Defendant-Appellee Vikas Mittal that specializes in structured transactions with SPACs and de-SPAC companies. In transactions of this type, Meteora acquires SPAC shares before the de-SPAC vote, agrees not to redeem those shares at the vote, and receives from the merged company both a pre-agreed number of shares (in this case, a total of 5,000,000 shares of Roadzen) and a return of Meteora's original SPAC investment. The result is that Meteora holds 5,000,000 shares of the merged company at effectively zero net cost basis.

The economic structure of the Forward Purchase Transaction was designed to provide funding to Roadzen during the eighteen-month term of the FPA. Under the parties' agreed structure, Meteora had the right to sell the 5,000,000 shares during the term at its discretion. When Meteora sold shares, Roadzen claims that it was required to remit to Roadzen the Reference Price for each share sold, and Meteora would retain the excess above the Reference Price as its fee for the transaction. By way of example, if the Reference Price was $10.76 per share and Meteora sold a share for $12.00, Meteora was required to remit $10.76 to Roadzen and retain $1.24. The parties agreed to a Reference Price of $10.76 per share, subject to reduction in the event Roadzen sold shares at a lower price than the Reference Price.

To secure Meteora's initial performance, the FPA provided that Meteora would make an initial advance to Roadzen at closing and would have the right to recoup that advance from a defined initial category of sales (the "Prepayment Shortfall Sales") without immediate payment obligation to Roadzen. Once the Prepayment Shortfall was fully recovered, it is Roadzen's position that subsequent sales by Meteora triggered payment to Roadzen at the Reference Price under the Optional Early Termination ("OET") mechanism, with Meteora required to provide an OET Notice and to remit payment by the last day of the calendar month in which the sale occurred.

At the end of the eighteen-month term of the agreements (the "Valuation Date"), the Forward Purchase Transaction would settle. Meteora was entitled to a fee of $1.25 per share as compensation for holding any unsold shares through the term. This unsold-share fee was structured as a Settlement Amount Adjustment applied against the Settlement Amount calculation at the Valuation Date, with the Settlement Amount itself calculated based on the volume-weighted average price ("VWAP") of Roadzen shares during the Valuation Period. The

combined effect of the $1.25-per-share unsold-share fee and the VWAP-based Settlement Amount was to protect Meteora's downside on any shares that remained subject to the FPA at the Valuation Date, entitling Meteora to a guaranteed minimum recovery per share regardless of where the market price traded.

Contrary to Roadzen's reading of the agreements, Meteora has argued that the Forward Agreement authorized three types of sales:

- First, it could engage in Shortfall Sales. Under that mechanism, Meteora could keep all of the proceeds but had to notify the Company so that the Shortfall Sale Shares would be removed from the Number of Shares used for the Settlement Payment calculation;

- Second, it could exercise the Early Termination Option. Under that mechanism, Meteora could identify Terminated Shares, pay the Company $10.76 per share, and give notice to the Company so the Terminated Shares would be removed from the Number of Shares used for the Settlement Payment calculation. Meteora did not have to sell the Terminated Shares, only give "OET" notice to the Company and pay $10.76 per Terminated Share; and

- Third, Meteora could simply sell shares without any notice or payment to the Company, but without reducing the Number of Shares. Meteora would still owe the Company for those shares as part of the Settlement Payment calculation [this interpretation is in contention and in part forms the basis for the claims asserted in this action].

The Subscription Agreement addressed the mechanics of Roadzen's issuance of additional treasury shares to Meteora as needed to reach the pre-agreed total of 5,000,000 shares. In this case, at the time of the "deSPAC", Meteora was issued 4,297,745 post merger Roadzen shares. The Subscription Agreement required the issuance of additional shares to reach a total of 5,000,000 shares; in this case 702,255 additional treasury shares were issued to Meteora at the time of the closing. Pursuant to the Subscription Agreement, Roadzen was required to register those additional shares with the Securities and Exchange Commission within a defined period following the de-SPAC closing.

Contrary to the third method of selling shares described above, Roadzen's position throughout this dispute has been that the FPA, read as an integrated agreement together with the Subscription Agreement and the ISDA 2002 Master Agreement, required Meteora to pay Roadzen the Reference Price under the OET mechanism whenever Meteora sold shares (other than the initial Prepayment Shortfall Sales), with payment due by the last day of the calendar month in which the sale occurred.

Meteora has taken the contrary position that the OET provisions are optional and are triggered only upon Meteora's affirmative delivery of an OET Notice. Under Meteora's reading, Meteora could sell shares at any time and at any price during the term without triggering any payment obligation to Roadzen. Roadzen's sole entitlement, under Meteora's reading, would be a residual Settlement Amount calculated at the Valuation Date based on the VWAP of the shares that remained subject to the FPA at that date, further reduced by the $1.25-per-share Settlement Amount Adjustment owed to Meteora on any unsold shares.

For reasons that are unimportant to this motion, Roadzen did not register the additional shares and Meteora declared a breach of the Subscription Agreement. At the time of the declared breach of the Subscription Agreement, Roadzen claimed that Meteora had sold shares in the market, did not notify Roadzen of the sale, retained the proceeds and did not remit the pre-agreed $10.76/share reference price to Roadzen.

**Procedural Background:**

Initially Roadzen filed a complaint against Meteora in the Florida state courts [Meteora's main office was in Florida] in which causes of action for breach of contract and breach of the Covenant of Good Faith and Fair Dealing was asserted. The next day Meteora filed a complaint in the Delaware Chancery Court based upon a venue clause in the Subscription Agreement

alleging causes of action for breach of the Subscription Agreement and a declaratory judgment that Meteora had complied with the terms and conditions of the FPA and further for a declaration that Meteora only owed Roadzen $914,726.72. Of note is that Meteora in its complaint admitted that it had not paid Roadzen the amount that it admitted was owed based upon its calculation.

One month later, before Roadzen had filed an answer in the Delaware case and before any discovery, Meteora filed a motion for partial summary judgment regarding the breach of the subscription agreement cause of action and that portion of the declaratory judgment cause of action seeking a declaration that Meteora had complied with the terms and conditions of the agreements. Oral argument on Meteora's partial motion for summary judgment was held on May 21, 2026 and the Delaware Court issued an Opinion on August 27, 2026 [a copy of which is submitted herewith as Exhibit "A"].

On September 22, 2025 this action was filed but excluded the causes of action asserted in the Florida action. Thereafter on October 14, 2025 Roadzen voluntarily discontinued the Florida action and on Monday October 17, 2025 amended this action to include the Florida causes of action.

The following causes of action have been asserted in this action (Doc #9):

> First Cause of Action: Fraud and Fraud in the inducement;
>
> Second Cause of Action: Misrepresentation;
>
> Third Cause of Action: Declaratory Judgment declaring that the individual Defendants have abused the corporate form, that the "corporate veil shall be pierced" and that the individual Defendants should each be jointly and severally personally liable on all asserted causes of action;
>
> Fourth Cause of Action: Breach of Contract;

> Fifth Cause of Action: Breach of Covenant of Good Faith and Fair Dealing;
>
> Sixth Cause of Action: Violations of the RICO statute (18 USC 1961-1968);
>
> Seventh Cause of Action: Violation of 15 USC 77(q)(a) [Use of Interstate Commerce for Fraud or Deceit]
>
> Eighth Cause of Action: Stock Manipulation in Violation of 15 USC 78(j) and 17 USC 240.10b-5 and 240.10(b)
>
> Ninth Cause of Action: Unjust Enrichment

Thereafter, on January 30, 2026 Meteora filed a FRCP 12(b)(6) motion to dismiss for failure to state a cause of action. On July 9, 2026 the District Court granted Meteora's motion to dismiss (Doc #41), a copy of which is submitted herewith as Exhibit "B". Thereafter judgment was entered on August 10, 2026 (Doc #48). This appeal is taken from the District Court's order and subsequent judgment.

An issue that will be argued in this appeal is the fact that the District Court, beyond making a determination of whether or not Roadzen had set forth allegations to substantiate the asserted causes of action, reviewed the subject agreements, made what Roadzen claims are erroneous findings of fact and based thereon dismissed Roadzen's Amended Complaint. In its appeal, Roadzen will be arguing that the District Court misinterpreted provisions of the subject agreements and further improperly made findings of fact and dismissed the case based upon those erroneous findings of fact when the pending motion merely sought dismissal for failure to state a cause of action.

More specifically, Roadzen is arguing that the District Court on the motion to dismiss pursuant to FRCP 12(b)(6), instead of limiting its "investigation" of the pleadings to determine whether underlying facts were pled to support each of the claimed causes of action, the Court

reviewed the agreements and made the following erroneous findings which are being appealed:

1. The District Court interpreted the contracts that contained contradictory terms without discovery or expert testimony and made findings of fact upon which it based its decision to dismiss the causes of action asserted rather than limited its review to determine whether the allegations in the complaint set forth facts sufficient to support the elements of each of the alleged causes of action;

2. The District Court made a finding of fact that the agreements did not specifically provide for payments of $10.76/share sold by Meteora [rather the court did not recognize the reference in the agreement as to how the per share amount was to be calculated nor the evidence submitted in which the Respondents acknowledged that the reference price was $10.76/share] (ECF 41 at pg 7);

3. The District Court failed to address the notice provisions in the agreements. More specifically that the agreements, when taken as a whole required Respondents to give Appellants notice:

    a. Whenever Roadzen stock was sold;

    b. The amount of stock sold and the price received for each sale;

    c. The agreements required written notice to register shares of stock transferred to Meteora per the agreements;

    d. The agreements required written notice that Roadzen was in default in registering shares of stock transferred to Meteora, with the right to cure the default;

4. The District Court made findings of fact that Defendants/Respondents were not required to give Plaintiff/Appellant any notice upon the sale of shares and that as a result the Defendant/Respondents had not breached the agreements (ECF 41 at pg 11).

5. The District Court interpreted select provisions of the contracts and made findings of fact with regard to what it believed the contracts provided but failed to "identify" provisions of the agreements including the requirement to make monthly payments of sales of stock by Respondents;

6. The District court made findings of fact with regard to the manipulation of stock allegations based upon limited documentation submitted by Respondent without giving Appellant the opportunity to engage in discovery to substantiate the stock manipulation claims;

7. The District Court made a finding of fact that the initial term sheet contained the usual "small print" language that the terms were "superseded" by the more formal agreement [not taking into consideration that the "inducement" of entering into the agreements was the term sheet which was the independent cause of action of fraud in the inducement];

8. The District Court made a finding of fact that the contract terms "superseded" the Term Sheet notwithstanding the fact that the main contract was identified as a "Confirmation" which, if discovery had been permitted, upon information and belief would have revealed that the parties intended that the agreements were intended to be a "confirmation" of the Term sheet;

9. The District Court interpreted the terms of the 3 agreements as significantly "contrary" to the representations made in the term sheet and the representations made orally by Meteora to induce Appellant to enter into the agreements [specifically that as shares were sold, payment would be made to Roadzen at the "reference price" as alleged, which did not occur, which formed the basis for the breach of contract allegations];

10. Roadzen submitted proof that Meteora had sold approximately 4,000,000 of the 5,000,000 shares however, the District Court made a finding of fact without any discovery, that Meteora had not breached the agreements notwithstanding the proof that Meteora admitted that it still owed Roadzen $914,726.53;

11. The District Court made a finding of law that the state claims [Breach of Covenant of Good Faith and Fair Dealing, Unjust Enrichment and Fraud] were merely duplicative of the Breach of Contract causes of action and therefore dismissed those claims based thereon, notwithstanding the Court's recognition that alternative pleading is a well-established rule of pleading causes of action;

12. The District Court made a finding of fact that no provision in the agreements imposes an obligation on Meteora to give Roadzen notice of sales of stock as alleged and therefore, Meteora had not breached the agreements by refusing to disclose sales of shares and the terms of each sale [this ruling was consistent with the Delaware Court's ruling but diverged in that the Delaware Court made findings of fact that Meteora still owed Roadzen money and the formula to determine the amount owed utilized by Meteora was incorrect resulting in a substantially greater obligation] ;

13. The District Court ruled that Unjust Enrichment is an alternatively pled cause of action to a Contract cause of action, which is permissible only "where the validity and scope of the contract is difficult to determine, where the parties dispute the existence of a contract, or where the claims arise out of agreements or understandings of the parties that were not expressly written in the contract…". The District Court made a finding of fact that the contracts were valid and there were no "disputes" as to the meanings in the agreements and therefore dismissed the Unjust Enrichment cause of action [Appellate contends that **METEORA WAS A DEFACTO UNDERWRITER** in that post de-SPAC Roadzen returned all the funds Meteora had invested in the SPAC, issued 5,000,000 shares to Meteora and Meteora had the right to sell shares as they saw fit without Roadzen's consent. Meteora was thus holding the shares at "no risk" of loss, which it is argued is the definition of an "underwriter". Roadzen entered the Agreements with the understanding/belief that pursuant to Meteora's representations, it would not sell shares into the market for less than $10.76/share since it was obligated to pay to Roadzen that amount monthly for each share sold during that month. However, if Meteora is ruled to be

an unlicensed underwriter, the contracts would be void by reason of the violation of Section 5 of the SEC act of 1933. In that event, Unjust Enrichment would be the proper cause of action.]

14. The District Court made a "finding of fact" that "the parties do not dispute that the FPA and Amendment are enforceable contracts or that the claims here arise out of the provisions of those agreements…". That is in dispute, as set forth hereinabove.

15. The District Court made a finding of fact that the fraud claims asserted were based upon a duty to perform the contract which is duplicative of the contact causes of action… which is contrary to the claims asserted; to wit that Roadzen was induced into entering into the agreements based upon the promises made to sell shares and remit money so that Roadzen would have funds to expand its business upon the merger [as clearly set forth in the term sheet] and further represented that the program as described was permitted under the securities laws when Meteora knew that it was not a licensed underwriter and that as a seller of shares for which it had no monetary interest [that is after the de-SPAC Meteora received the return of all of the money invested in the SPAC and received 5,000,000 Roadzen shares that it had the authority to sell] it was illegally acting as an underwriter contrary to SEC rule 5;

16. The District Court while recognizing that alternative pleading is permitted, ruled that there is no "separate cause of action for breach of implied covenant of good faith and fair dealing when a breach of contact claim, based upon the same facts, is also pled…", however, the Court did not recognize the "possibility" that the contract could be deemed void based upon the violation of SEC rule 5 in which event the implied covenant of good faith and fair dealing could apply;

17. The District Court recognized that Roadzen has pled that the amendment and funding scheme was a violation of Section 5 of the Securities Act of 1933. However, Roadzen also pled that the funds "loaned" in the amendment was not a fraud in the sale of securities [which would prevent a RICO claim] but rather was a fraud in inducing Roadzen to enter into the usurious

loan as set forth in the Amendment. [Note: If Roadzen went into the market to sell shares itself at a much lower market price, the "reference price" per the agreements would be significantly lowered thus resulting in a multi-million-dollar loss in the value of the shares Meteora was holding and presumably would be obligated to pay to Roadzen as the shares were sold]. Further it was pled that similar "usurious loan agreements" were induced by Meteora with at least 2 other companies using the same "leverage" and therefore met the standards required to allege a cause of action under the RICO laws.]

18. The Complaint alleged damages as follows:

| | |
|---|---|
| Initial shares issued: | 5,000,000 |
| Less: Shares sold in Sept 2023 following the 9/20/23 de-SPAC | (212,728) |
| Shares sold to recoup money advanced in the Amendment | (880,610) |
| Shares held at 3/31/25 [the end of the term of the Agmts] | (1,267,163) |
| Total shares sold for which Roadzen has not received payment | 2,639,499 |
| Per share price Roadzen to receive upon sale | x $10.76/share |
| Unpaid revenue from the sale of shares by Meteora | $28,401,009.24 |
| Guaranteed Payment to Meteora for unsold shares: | |
| 1,267,163 shares X $1.25/share = | ($1,583,953.75) |
| Net unpaid to Roadzen per FPA [compensatory damages] | $26,817,055.49 |
| [See paragraphs 306-314 of the Amended Complaint (Doc #9)] | |

The District Court reviewed the contracts and made findings of fact that notwithstanding the foregoing allegations, the complaint did not sufficiently allege a Breach of Contract cause of action and further, even if the Court's finding of fact is sustained on appeal, the foregoing pleading of damages would give rise to the Unjust Enrichment cause of action.

19. Based upon the same facts as are at issue in this case, Meteora commenced an action in Delaware Chancery Court, in which Meteora asserted a Declaratory Judgment cause of action seeking a declaration that it has complied with its obligations under the FPA, that it only owed Roadzen $914,726.53, and a second cause of action in which Meteora alleged that Roadzen had breached the terms of the Subscription Agreement and was damaged thereby. That case is still pending at this time [Delaware Chancery Court C.A. No. 2025-0421-JTL].

The Delaware Court, upon the motion for summary judgment analyzed the terms of the agreements, however, its "analysis" was much more detailed and in some instances contrary to the District Court's "interpretation" of the agreements. In its 70-page opinion, the Delaware Court while it granted partial summary judgment, was clear that the formula Meteora calculated was owed to Roadzen was incorrect and described the proper calculation formula. While the calculation has yet to be addressed in the Delaware Court, the amount that Meteora owes to Roadzen is at least 3 to 4 times greater than the $914,726.53 that Meteora "admits" that it still owes Roadzen. This was in part the basis for the Breach of Contract cause of action that was dismissed by the District Court. Further, regardless of the proper formula to determine the amount Meteora owed to Roadzen, in its Delaware pleadings, **Meteora admitted that it had not remitted the amount it claimed it owed to Roadzen!**

The Delaware Court at pages 61-69 of its opinion addresses the diverging interpretation of the agreements with regard to Meteora's interpretation versus Roadzen's interpretation as to whether Meteora can sell shares, retain the proceeds and then at the end of the term of the agreements, adjust the amount it was obligated to pay to Roadzen based upon the VWAP rather than the amount actually received by Meteora when the shares were sold. While the Delaware Court did make a finding of fact that the terms of the agreements do provide for the payment "scheme" as advanced by Meteora, the Delaware Court also recognized that while a cause of action for breach of the covenant of good faith and fair dealing was not asserted in the Delaware action [in that it was the subject of the claim in the New York Southern District action] such a cause of action would be applicable under the terms and conditions of the facts of this case.

Both the New York Southern District opinion and the Delaware opinion are:

a. based upon the same contracts as between the same parties;

b. based upon the same factual history between the same parties; and

c. are the result of motions made by Meteora seeking to justify a very onerous reading of the business relationship between the parties.

**Request to supplement the Appendix with the Delaware Chancery Court decision:**

Under the doctrine of stare decisis, when a court faces a legal argument, if a court has ruled on the same or a closely related issue, then the court will make their decision in alignment with the previous court's decision. The previous deciding-court must have binding authority over the court; otherwise, the previous decision is merely persuasive authority. There is no dispute that the Delaware Chancery Court's decision is not binding upon this Court, but it is "persuasive authority" in the context of the pending appeal.

In *Kimble v. Marvel Enterprises* 576 U.S. 446 (2015)), the U.S. Supreme Court described the rationale behind stare decisis as "promot[ing] the evenhanded, predictable, and consistent development of legal principles, foster[ing] reliance on judicial decisions, and contribut[ing] to the actual and perceived integrity of the judicial process."

While Article VI of the U.S. Constitution (the supremacy clause) provides that federal law, treaties, and the Constitution override conflicting state laws, state supreme courts are the ultimate authority on interpreting their own state laws and constitutions. Federal courts must accept a state court's interpretation of that state's law.

In the landmark case of Erie Railroad Co. v. Tompkins (304 U.S. 64 (1938)), the U.S. Supreme Court ruled that federal courts sitting in diversity jurisdiction must apply state common law rather than creating a "federal common law," meaning federal courts must defer to state court interpretations of state law.

In the case at bar, federal jurisdiction was based upon violations of the RICO statute (18 USC §§1961-1968), violation of 15 USC §77(q)(a) [Use of Interstate Commerce for Fraud or Deceit] and Stock Manipulation in Violation of 15 USC §78(j), and 17 USC §§240.10b-5 and 240.10(b). However the causes of action of breach of contract, fraud in the inducement and misrepresentation, breach of the covenant of good faith and fair dealing and unjust enrichment are all "state" claims in which the District Court exercised "supplemental jurisdiction" pursuant to 28 USC §1367. Those state claims were the subject of the Delaware Court's analysis on the partial summary judgment motion.

In the appeal to the Court of Appeals, Appellant is seeking:

A. DeNovo review based upon Appellant's claim that the District Court made findings of fact on the motion to dismiss [FRCP Rule 12(b)(6) motion] without regard to whether the alleged causes of action were properly pled;

B. DeNovo review of the Districts Court's finding of law that the Fraud, Unjust Enrichment and Breach of Covenant of Good Faith and Fair Dealing were duplicative of the Breach of Contract cause of action and therefore should be dismissed in that the District Court's ruling is contrary to the right of alternative pleading;

C. That the District Court abused its discretion in making findings of fact without giving Plaintiff/Appellant the opportunity to engage in discovery to substantiate the claims asserted; and

D. The findings of fact made by the District Court were error in that other facts expected to be revealed in discovery would result in judgment in favor of the Plaintiff/Appellant, some of which were addressed in the Delaware Chancery Court decision.

In the foregoing context, the Delaware Court's findings of fact and rulings are most relevant to the pending appeal and should be considered by the Court of Appeals in determining the issues raised in this appeal.

**WHEREFORE,** it is respectfully submitted that both the July 9, 2026 District Court

opinion and the August 27, 2026 Delaware Chancery Court opinion are relevant to the pending appeal and Appellant, Roadzen requests that Appellant be permitted to supplement the record on appeal to add the August 27, 2026 Delaware Chancery Court Opinion to the Appendix and thereby permitting argument based upon both court's findings and for such other and further relief as to this Court may seem just and proper.

Dated: New York, New York
September 28, 2026

The Shayne Law Group, P.C.

Richard E. Schrier, esq.
Attorneys for Plaintiff-Appellant, Roadzen, Inc.
262 W. 38th Street, Ste 1705
New York, New York 10018
212-566-4949/516-739-8000
Direct: 516-578-8999
resincourt@aol.com